# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>**v.**<br><br><br>**RUBY SCOTT,**<br><br>Defendant. | **2:24-CR-20308-TGB-APP-1**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S OMNIBUS MOTION IN LIMINE (ECF NO. 19);**<br><br>**AND DENYING SCOTT'S MOTION FOR A BILL OF PARTICULARS (ECF NO. 22)** |

In this Medicare fraud case, Ruby Scott is charged with conspiring to illegally pay kickbacks to induce others to refer individuals for services which may be paid for under Medicare. The government and Scott have filed motions which must be resolved before Scott's trial. The government filed an Omnibus Motion in Limine, ECF No. 19, and Scott filed a Motion for a Bill of Particulars. ECF No. 22. For the reasons that follow, the government's Omnibus Motion in Limine will be **GRANTED** in part and **DENIED** in part, and Scott's Motion for a Bill of Particulars will be **DENIED**.

### A.    Motions by the Government

The government filed an Omnibus Motion in Limine containing seven individual motions for the Court to preclude Scott from presenting certain evidence or argument to the jury. ECF No. 19, PageID.72. For the reasons that follow, Motions #1, #2, #3, #4, and #7 will be **GRANTED**, while Motions #5 and #6 will be **GRANTED IN PART AND DENIED IN PART**.

### 1.    Motion to Preclude Defenses Based on the Anti-Kickback Statute's Safe Harbor Provisions

The government's first Motion asks the Court to preclude any defense Scott might have based on the Anti-Kickback Statute's safe harbor provisions. ECF No. 19, PageID.73. The government argues that Scott should not be permitted to invoke two of those safe harbors: the "*bona fide* employee safe harbor," and the "personal services and management contract" safe harbor. *Id.*

As a preliminary issue, the government argues that these safe harbors are affirmative defenses which require a threshold showing of evidence before they may be used at trial. *Id.* at PageID.74-76. Scott appears to concede this argument by not responding to it. ECF No. 25, PageID.180-81. And the argument is well-taken. "The courts that have considered [these safe harbor provisions] have found that [they] compris[e] . . . affirmative defense[s] to charges of healthcare fraud." *United States v. Douglas*, No. 16-20436, 2019 WL 1315731, at *10 (E.D.

Mich. Mar. 22, 2019)(Lawson, J.) (collecting cases). Since the safe harbors are affirmative defenses, "where there is insufficient evidence, as a matter of law, to support an element of the affirmative defense, the defendant can be precluded from presenting any evidence [of the affirmative defense] to the jury." *United States v. Kpomassie*, 323 F. Supp. 2d 894, 900 (W.D. Tenn. 2004) (*quoting United States v. Sarno*, 24 F.3d 618, 621 (4th Cir. 1994)); *see also United States v. Hopkins*, 151 Fed. App'x 448, 455-56 (6th Cir. 2005) (rejecting a jury instruction on an affirmative defense when the defendant failed to present evidence upon which a reasonable juror could conclude that the defense would apply).

Because the safe harbors are affirmative defenses, if there is no evidence upon which a reasonable juror could conclude that the safe harbor would apply, the Court must preclude the defendant from invoking those safe harbors under Fed. R. Evid. 401 and 403. *See United States v. Johnson*, 417 F.3d 464, 467-68 (6th Cir. 2005) (*quoting United States v. Bailey*, 444 U.S. 394, 416 (1980)).

### a. The *Bona Fide* Employee Provision Does Not Apply, Making Evidence of it Inadmissible

The *bona fide* employee safe harbor of the Anti-Kickback Statute provides that payments that would otherwise be unlawful kickbacks will not be unlawful if made "by an employer to an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services." 42 U.S.C. §

1320a-7b(b)(3)(B). Scott intends to seek the safe harbor that her allegedly unlawful payments to one Kysha Marshall were payments to a *bona fide* employee. ECF No. 25, PageID.180.

Courts evaluating whether a healthcare marketer is a *bona fide* employee for purposes of this safe harbor look at whether the hiring party had control over the marketer's work hours, whether the marketer's work was part of the regular business of the hiring party, and the manner of the marketer's payment. *United States v. Eggleston*, 823 Fed. App'x 340, 345-46 (6th Cir. 2020) (*citing Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 1992)). Where a marketer is paid per referral, this helps justify a finding that the marketer was not a *bona fide* employee. *See Eggleston*, 823 Fed. App'x at 346; *United States v. Robinson*, 505 F. App'x 385, 387-88 (5th Cir. 2013).

Here, the government has pointed to evidence that Marshall was paid by referral and otherwise was not an employee of Scott. "As the government's witnesses will testify, and as Delta's wage records and records of the payments to Marshall will show, Marshall had no employment relationship with Delta. Marshall was a patient recruiter whom Delta paid per patient referred. . . ." ECF No. 19, PageID.76. Scott responds that "Marshall was never paid per patient referral . . . . she was consistently compensated based on the trust and nature of their working relationship." ECF No. 25, PageID.181. However, Scott points to no evidence that Marshall was not paid per referral, whereas the

government points to witness testimony and record evidence. *See* ECF No. 19, PageID.77. Because Scott makes no threshold showing by pointing to any evidence that Marshall was *not* paid per referral, she fails to show that a reasonable jury could find that Marshall was her "employee" for the purposes of this safe harbor.

Scott also responds that Marshall performed other work for Scott, and that the nature of that work made Marshall an employee.

> Marshall contributed to Delta's operations by **assisting with marketing, brochures, client retention**, and patient maintenance. As a case manager, Marshall facilitated patient care, communicated updates, and collaborated with Scott in strategy discussions—an employer-employee dynamic, not an illicit arrangement.

ECF No.25, PageID.180 (emphasis added).

The government argues, though, that for payments to be covered by the *bona fide* employee safe harbor, the payments must be "for employment in the provision of covered items or services." ECF No. 19, PageID.77 (*quoting* 42 U.S.C. § 1320a-7b(b)(3)(B)). The government contends that Marshall's other work—which as described by Scott directly above, appeared to be essentially marketing tasks—did not fall within the definition of "the provision of covered items or services," because marketing is not covered by Medicare. ECF No. 19, PageID.77-78. Scott did not respond to this argument. To the extent that Scott paid

Marshall for services that were not covered under Medicare, Scott cannot rely on the *bona fide* employee safe harbor.

At this stage, Scott has not pointed to evidence from which a reasonable jury could find that her payments to Marshall were to a *bona fide* employee for the provision of covered items or services. Therefore, because the *bona fide* employee safe harbor is an affirmative defense, Scott has not met her threshold burden to present it to the jury.

### b. The Personal Services/Management Contract Safe Harbor Does Not Apply

The government also moves the Court to preclude Scott from presenting evidence that her payments to Marshall are protected under the safe harbor for payments made under a "personal services and management contract." ECF No. 19, PageID.79 (*citing* 42 C.F.R. § 1001.952(d)). Scott states that she may invoke this safe harbor at trial. ECF No. 25, PageID.180.

However, that safe harbor requires that the payments be made under an "agency agreement [which] is set out in writing and signed by the parties." 42 C.F.R. § 1001.952(d)(1)(i). In Scott's Response, she stated that her relationship with Scott "was built on trust and **an express verbal employment agreement**." ECF No. 25, PageID.180 (emphasis added). Because Scott did not pay Marshall pursuant to an agency agreement set out in writing and signed by the parties, Scott may not

6

rely upon or invoke the "personal services and management contract" safe harbor of the Anti-Kickback Statute.

### c.   Argument or Evidence of the Safe Harbor Provisions is Excluded

Based on the evidence to which the Court has been directed, no reasonable jury could find that Scott's conduct is protected by the Anti-Kickback Statute's safe harbors. Therefore, Scott may not present argument that her conduct is within those safe harbors. Where a defendant cannot show that a safe harbor would apply to her, Federal Rules of Evidence 401 and 403 allow the Court to exclude evidence of those safe harbors as irrelevant and prejudicial. *See United States v. Trumbo,* No. 18-20403, 2019 WL 3289848, at *2 (E.D. Mich. July 22, 2019)(Hood, C.J.). The government's Motion is **GRANTED**, and the Court bars evidence and argument of the safe harbor provisions in this case.

In the event that the evidence at trial supports a showing sufficient to permit a reasonable person to conclude that either or both of these safe harbors apply, the Court will allow Scott to ask the Court for permission to present evidence and argument as appropriate. For instance, if Marshall testifies that in fact, she performed services that were covered by Medicare, not just marketing, that could open up the question of whether Scott's payments for those services are covered by the *bona fide*

employee safe harbor. At that point, Scott could ask for permission to present more evidence and argument on that safe harbor.

Moreover, this Order does not prevent Scott from arguing that the government has not met its burden. For example, Scott may ask Marshall whether Scott paid Marshall per referral. But Scott may not ask whether Marshall had "an employee-employer" dynamic with Scott, or whether Marshall and Scott's relationship was founded on an "express verbal employment agreement." That would confuse the jury and would be an attempt to invoke a safe harbor in the absence of making the required prima facie showing. *See Johnson*, 417 F.3d at 467-68 (*quoting Bailey*, 444 U.S. at 416 ("Where 'an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense.").

To conclude, Scott may not refer to the safe harbors in her opening statement or argue or otherwise suggest in questioning that they applies, without prior permission from the Court.

### 2. Motion to Preclude Evidence Regarding Benefits to Patients Referred by Marshall

The government has moved to preclude Scott from offering evidence "that the patients Marshall referred to Delta were truly homebound and in need of home care services, or that they received services from which they purportedly benefited." ECF No. 19, PageID.82. The government

argues that such evidence would be irrelevant under Federal Rule of Evidence 401, and improper propensity evidence under Rule 404(b). Scott responds that "the existence of real patients receiving real services is compelling proof of a legitimate business arrangement, not a fraudulent scheme." ECF No. 25, PageID.182.

The Court agrees with the government that evidence that referred patients received services is irrelevant. The Anti-Kickback statute prohibited Scott from paying someone to refer others to Scott for covered medical services. 42 U.S.C. § 1320a-7b(b)(2)(A). Scott would be liable if she did so, regardless of whether the referred patients received services. *See Eggleston*, 823 Fed. App'x at 344 ("The crime at issue makes no distinction between kickbacks earned from medically necessary services and those earned from unnecessary ones."). Therefore, whether patients Marshall referred to Scott received services is irrelevant, and the Court **ORDERS** that evidence of such services, or the referred parties' need for them, or whether the parties were truly homebound, is excluded under Federal Rule of Evidence 401.

The government also moves the Court to preclude Scott from offering evidence that in other instances than the ones which were allegedly fraudulent, Scott did not commit fraud. ECF No. 19, PageID.83. The government points to caselaw holding that where misconduct is alleged, "evidence that a defendant engaged in legal, honest conduct some of the time has simply no bearing on whether the defendant engaged in,

9

or had knowledge of, fraudulent conduct charged by the government." *Id.* This argument is well taken. Courts exclude evidence of proper conduct in healthcare fraud cases like this. "[T]he fact that [the defendant] can direct the Court to instances where he properly billed Medicaid is completely unrelated and irrelevant to a determination of whether he is guilty or innocent of the charged offense of Healthcare Fraud." *United States v. Judd*, 672 F. Supp. 3d 389, 392-93 (E.D. Mich. 2023) (*citing United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014)). Therefore, the Court **ORDERS** that Scott may not present evidence of whether her patients actually received services, and that Scott may not present evidence that she obtained patients through lawful methods (except that she may present evidence that the allegedly unlawful transactions were in fact lawful).

### 3. Motion to Preclude Evidence or Argument of Specific Instances of Good Conduct

Similarly, the government moves for an order precluding Scott from presenting evidence or argument of specific instances of good conduct by Scott. ECF No. 19, PageID.84-85. The government points to caselaw holding that while a criminal defendant may present witness testimony of her good character, she may not do so with evidence of specific instances of good conduct unless "a person's character or character trait is an essential element" of the charged offense. *See United States v. Silber*, 456 F. App'x 559, 562 (6th Cir. 2012) (*quoting* Fed. R. Evid. 405).

10

Scott responds that her character *is* an essential element of the charged offense, because "the case likely involves an assessment of [her] ethical conduct and patient care." ECF No. 25, PageID.185. But courts find otherwise. *See United States v. Kahn*, 768 F. App'x 266, 270 (5th Cir. 2019) (finding that a defendant's character was not an essential element of his Anti-Kickback Statute charge). The Court agrees with Fifth Circuit's analysis: character does not appear in the statute and is not an element of the offense. Allowing Scott to present specific instances of good conduct is not permitted by the Rules of Evidence, and would allow Scott to do that which the Court's ruling on the government's second Motion precluded: arguing that on other occasions she behaved lawfully. The Government's third Motion is **GRANTED**.

### 4.    Motion to Preclude Scott from Blaming Medicare or its Contractors

The government moves the Court to order that Scott cannot argue to the jury or present evidence suggesting that the failure of Medicare or its contractors to detect or prevent the kickbacks is a defense to Scott's charges. ECF No. 19, PageID.88. They point to courts which find that "a victim's own gullibility or even negligence is no defense to criminal fraud . . . the focus is on *the defendant's* conduct." *United States v. Higgins*, No. 22-3538, 2023 WL 6536752, at *3 (6th Cir. Oct. 6, 2023) (emphasis in original). Scott does not contest this motion. ECF No. 25, PageID.186. The Court will therefore **GRANT** that motion.

11

### 5. Motion to Preclude Argument About Uncharged Persons

The government moves the Court to order that Scott may not present evidence that other individuals or entities involved in the alleged kickback scheme could have been charged in a like manner but were not. ECF No. 19, PageID.89. While is true that the guilt or innocence of others is not to be considered by the jury, and "the government's charging decisions are not proper subjects for cross-examination and argument," *United States v. White*, 692 F.3d 235, 245-47 (2d Cir. 2012), as amended (Sept. 28, 2012) (*quoting United States v. Carneglia*, No. 08-CR-76, 2009 WL 185725, at *1 (E.D.N.Y. Jan. 27, 2009)), the motion to preclude sweeps too broadly.

While evidence that other individuals who participated in the kickback scheme were not charged is irrelevant to whether Scott committed the charged offenses, Scott points out that the government seeks to present the testimony of Keysha Marshall and Tracy Spencer, two former participants of the alleged kickback scheme. ECF No. 25, PageID.186-187. Judge Hood held in *United States v. Toya*, No. 20-20452, 2024 WL 1858534, at *4 (E.D. Mich. Apr. 29, 2024), that evidence of the government's charging decisions related to witnesses "is relevant to as to the witness' bias, prejudice, or motive." As such, it is admissible impeachment evidence. *Id.* Therefore, the government's Motion is **GRANTED** insofar as the Court will exclude evidence of the

government's charging decisions *for non-witnesses*, but will **DENY** the government's motion as framed so that Scott may refer to the government's charging decisions relating to the government's witnesses, and may impeach those witnesses using evidence of those charging decisions.

### 6.    Motion to Preclude Evidence of Misconduct of Others in the Industry

The government moves the Court to preclude Scott "from presenting evidence and argument that others in the medical industry . . . commonly violate the federal Anti-Kickback Statute or that it is a usual practice in the industry." ECF No. 19, PageID.92. The government cites caselaw in which courts reject the "everybody-is-doing-it defense." *See United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 1999). The government is correct that evidence of wrongdoing by others is not relevant to show Scott's guilt or innocence. *See id.* Evidence of wrongdoing by others could be relevant if it negated *Scott's* guilt, such as by impeaching the credibility of cooperating witnesses. The government's Motion is **GRANTED** insofar as the Court will exclude evidence of criminal activity by persons other than Scott or her alleged co-conspirators. However, the Government's Motion is **DENIED** to the extent that it seeks to prevent impeachment of witnesses against Scott based on their own wrongdoing.

13

## 7.    Motion to Preclude Argument for Jury Nullification

The government moves the Court to preclude Scott from offering evidence and argument "designed to convince the jury to acquit—not based on the government's failure to prove its charge, but because a guilty verdict would be contrary to the jury's sense of justice, morality, or fairness." ECF No. 19, PageID.94. Such evidence and argument may not be presented in criminal cases. *See United States v. Milligan*, No. 20-CR-20134, 2023 WL 7103268, at \*7 (E.D. Mich. Oct. 27, 2023) (Goldsmith, J.) (granting the government's uncontested motion to preclude evidence and argument encouraging jury nullification). And Scott does not contest the government's Motion. The Court will therefore **GRANT** the government's Motion.

## B.    Motion by Defendant Scott for a Bill of Particulars

Scott has also moved for a Bill of Particulars. ECF No. 22. The Government filed a response. ECF No. 27. For the reasons that follow, Scott's Motion for a Bill of Particulars will be **DENIED**.

In Scott's Motion for a Bill of Particulars, she moved for the Court to require the government to identify the following information with specificity:

> All "laws," "rules," "regulations," and "policies and procedures in effect during the relevant period stating that payments to individuals are illegal kickbacks and bribes as alleged in Counts One through Five [of the Indictment], and all such "laws," "rules," "regulations," and "policies and procedures with which providers were required to

14

comply as a condition of Medicare reimbursement as alleged in Counts One through Five[.] ECF No. 22, PageID.151-52.

All dishonest and deceitful means" by which the defendants conspired to defraud the United States as alleged in Count One[.] *Id.* at PageID.152.

All "electronic transfers, cash payments, and check" as alleged in Count One through Five. *Id.*

The lack of any information as Medicare being billed to constitute the fraudulent billing as alleged in the indictment. *Id.*

The lack of any information as to the intent to defraud the Government through the fraudulent billing alleged. *Id.*

The government opposes Scott's Motion, arguing that the information which they provided to Scott and which is publicly available is sufficient. ECF No. 27, PageID.192. After reviewing the briefs and the law, the Court agrees with the government. Scott's Motion for a Bill of Particulars will be **DENIED**.

## 1.    Standard of Review

Rule 7(f) of the Federal Rules of Criminal Procedure provides that "[t]he court may direct the government to file a bill of particulars." "The purposes of a bill of particulars are to inform the defendant of the nature

of the charge against him with sufficient precision to enable him to prepare to trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction [in a later-arising double jeopardy situation]. *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976). To successfully challenge a district court's denial of a motion for a bill of particulars, the defendant-appellant must show that they actually suffered surprise or other prejudice at trial. *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993).

### 2.    "Laws," "Rules," and "Regulations"

Scott moves for the Court to order the government to list the laws, rules, regulations, policies, and procedures which, as alleged in the Indictment, (1) state that payments to individuals are illegal kickbacks and bribes; and (2) control how medical providers must act as a condition of Medicare reimbursement. ECF No. 22, PageID.151-52.

Scott argues that because she cannot be convicted of the alleged offenses unless she knew her conduct to be unlawful, she cannot prepare for trial without notice of the specific laws and rules stating that paying an employee to refer patients was unlawful. ECF No. 22, PageID.156 (*citing United States v. Nora*, 988 F.3d 823, 830 n. 3 (5th Cir. 2021) for the principle that the required *mens rea* in the Medicare kickback statute is that the defendant acted with the knowledge that her conduct was unlawful). But specification of particular rules or sections of statutes is unnecessary to prevent Scott from suffering surprise at trial: to be

16

convicted under the Anti-Kickback Statute, Scott did not need to know *the specific laws* that make paying for referrals unlawful. She need only know that doing so was unlawful. *See* 42 U.S.C. § 1320a-7b(h) ("With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section."). Therefore, the Court will not require the government to present Scott with a list of rules, regulations, and procedures. Moreover, the Indictment stated which statutes Scott is accused of violating.

### 3.    "Dishonest and Deceitful Means"

Scott moves for a bill of particulars to specify "all 'dishonest and deceitful means' by which [Scott] conspired to defraud the United States." ECF No. 22, PageID.157. Courts have found in complex fraud cases that when the government provided vast discovery, the government had to disclose "certain basic matters" in a bill of particulars. *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001). The "basic matters" included "the identity of the patient-victims . . . the records claimed to be false entries, and any allegedly fraudulent bills to insurers." *Id.* That way, the defense would "not be left to its own devices and a sifting of the voluminous materials that have been provided in order to divine the particulars of these critical allegations." *Id.*

However, in this case, the government has already disclosed evidence similar to that which the court required in *Vasquez-Ruiz*. They have disclosed "detailed data for all Medicare claims submitted . . . for

17

the time period at issue . . . . Defendant's representations regarding her understanding of the [Anti-Kickback Statute] . . . . records of bank accounts and electronic payment applications [associated with Scott] and which evidence every payment by [Scott] to Marshall in this scheme; Phone records; and Patient files." ECF No. 27, PageID.199. The Indictment also makes clear what the government alleges to be the "basic matters" in this case: Scott allegedly offered to pay remuneration in exchange for referrals for services which would be paid for by Medicare. ECF No. 1, PageID.6. Considering that the government has disclosed the kinds of critical records the *Vasquez-Ruiz* court saw fit to require, and the in light of the clarity and specificity of the Indictment, a bill of particulars will not be necessary to prevent Scott from suffering surprise at trial.

### 4.     "Electronic Transfers, Cash Payments, and Check"

Scott moves for a bill of particulars stating all "electronic transfers, cash payments, and check" that it is alleged that Scott used in her kickback scheme. ECF No. 22, PageID.152. But the government responds that they have disclosed all financial records that they intend to use as exhibits at trial, as well as a summary of payments. ECF No. 27, PageID.205. Scott faces no danger of surprise given these disclosures, so a bill of particulars containing this information is unnecessary.

### 5.   "The Exact Instances Which Led to the Fraudulent Billing of Medicare"

Scott moves for a bill of particulars stating the exact instances "for which she was reimbursed through federal funds." ECF No. 22, PageID.158. But as the government correctly responds, whether or not she was reimbursed through federal funds is immaterial to her charges under the Anti-Kickback Statute. ECF No. 27, PageID.205-06. That statute only requires that Scott pay for a referral for services which *can be* reimbursed with federal funds. *See* 42 U.S.C. § 1320a-7b(b)(2)(A). Scott will not suffer surprise at trial if she does not know whether she received reimbursement from Medicare, or how much such reimbursement was, because that is not an element of the charges against her. Additionally, as it relates to the charge of healthcare fraud, the government has disclosed "detailed data for all Medicare claims submitted . . . for the time period at issue." ECF No. 27, PageID.199.

### 6.   "Evidence of Ms. Scott's Specific Intent to do Something the Law Forbids"

Scott moves for a bill of particulars which outlines "any fact, documentation, or evidence of . . . Scott's specific intent to do something that the law forbids." ECF No. 22, PageID.159. She also moves for a showing of "Ms. Scott's specific intent to violate the Anti-Kickback Statute." *Id.* First, the government has disclosed significant evidence to Scott, including her own statements, such that Scott should be aware of the government's theory of how she intended to violate the law. *See* ECF

No. 27, PageID.199. Moreover, as the government correctly notes, they need not prove that Scott specifically intended to violate the Anti-Kickback statute itself. *Id.* at PageID.206-07; *see also* 42 U.S.C. § 1320a-7b(H). The government only must prove that Scott intended to pay kickbacks, knowing that it was unlawful to do so. *See Nora*, 988 F.3d at 830 n. 3 (5th Cir. 2021). Therefore, Scott is at no risk of surprise at trial, and a bill of particulars is unnecessary.

Because the specificity of the Indictment, combined with the full disclosure of the evidence in discovery, has provided Scott with a complete and sufficient understanding of the nature of the charges so that she may mount a vigorous defense, a bill of particulars is unnecessary. Accordingly, Scott's Motion for a Bill of Particulars is **DENIED**.

**SO ORDERED.**

Dated: August 6, 2025         /s/Terrence G. Berg
_____
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE