UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**RUBY SCOTT,**<br><br>Defendant. | 2:24-CR-20308-TGB-APP<br><br>HON. TERRENCE G. BERG<br><br>**OPINION AND ORDER DENYING DEFENDANT'S MOTION, AND AMENDED MOTION, TO QUASH THE GRAND JURY SUBPOENA (ECF NOS. 45, 49).** |

Defendant Ruby Scott has been charged with one count of Conspiracy to Defraud the United States and Pay Illegal Health Care Kickbacks (18 U.S.C. § 371), four counts of Payment of Kickbacks in Connection with a Federal Health Care Program (42 U.S.C. §§ 1320a–7b(b)(2)(A); 18 U.S.C. § 2), and five counts of Health Care Fraud (18 U.S.C. §§ 1347 & 2). ECF No. 53. On November 4, 2025, Ms. Scott filed a motion to quash a federal grand jury subpoena issued on October 29, 2025. ECF No. 45. On November 17, 2025, Ms. Scott filed an amended motion, which is identical to the November 4, 2025 motion. ECF No. 49. The Government responded on November 18, 2025. ECF No. 51. For the following reasons, the Court **DENIES** Defendant's motions (ECF Nos. 45, 49).

1

## I.  BACKGROUND

On June 13, 2024, Defendant Scott was indicted on one count of Conspiracy to Defraud the United States and Pay Illegal Health Care Kickbacks (18 U.S.C. § 371) and four counts of Payment of Kickbacks in Connection with a Federal Health Care Program (42 U.S.C. §§ 1320a–7b(b)(2)(A); 18 U.S.C. § 2). ECF No. 1.

On August 20, 2025, the Court held a pretrial conference. During that conference, the Government informed the Court that during its investigation and trial preparation, the Government had learned, as a result of discussion with physicians who "purportedly certified [Delta Home Health Care LLC] patients as homebound," that Ms. Scott "had falsified a number of CMS-485 Forms … representing that physicians had certified patients as homebound when in fact those physicians had not done so." ECF No. 51, PageID.470.

On April 4, 2024 and then again on September 5, 2025, law enforcement served Delta Home Health Care LLC "with a 'Request for Information (RFI) from the Office of Inspector General (OIG)' seeking sets of patient records." *Id.* In response to the April 2024 RFI, Delta Home Health Care LLC had "provided roughly 50 compilations of patient records." *Id.*

On October 29, 2025, a federal grand jury issued a subpoena directed to Delta Home Health Care LLC. *Id.*; ECF No. 51-1, PageID.478. The Government represents that the subpoena was sought and served as

2

a result of Delta Home Health Care LLC's "failure to comply with the RFI served on September 5, 2025, and as a result of additional information learned during the course of its investigation." ECF No. 51, PageID.470 (footnote omitted).

The subpoena directs Delta Home Health Care LLC provide following requested records to the agent serving the subpoena: "All PATIENT RECORDS in YOUR possession for any patient for whom a claim was submitted by Delta to Medicare, Medicaid, or private insurance." *Id.* at PageID.479. The attachment accompanying the subpoena clarifies that "'PATIENT RECORDS' includes, but is not limited to, all patient files, patient records, patient notes, patient referral documentation, and doctor certifications." and that "'YOU' or 'YOUR' refers to Delta Home Health Care LLC." *Id.*

Also on October 29, 2025, law enforcement served a subpoena on Brent Jaffe, Defendant Scott's counsel. ECF No. 51, PageID.471. The Government explains that "Law enforcement served the Subpoena on defense counsel, as defendant is Delta's registered agent, and defense counsel had previously agreed to accept service of the RFIs directed to Delta." *Id.*

The Government represents that on October 30, 2025, during a conference, "defense counsel stated that no responsive documents would be produced in response to the Subpoena." *Id.* Defense counsel

3

represented that "any document production would violate defendant's Fifth Amendment right against self-incrimination." *Id.*

On November 4, 2025, Ms. Scott filed a motion to quash the federal grand jury subpoena issued on October 29, 2025. ECF No. 45. On November 17, 2025, Ms. Scott filed an amended motion, which is identical to the November 4, 2025 motion. ECF No. 49. The caption of the docket entry reflects that the amended motion was filed "to attach exhibit." Indeed, appended to the amended motion is the grand jury subpoena. *See id.* The Government responded on November 18, 2025, arguing that the subpoena should not be quashed. ECF No. 51.

On the same day, November 18, 2025, the grand jury returned and the Government filed a superseding indictment, charging Defendant Scott with five additional counts of Health Care Fraud (18 U.S.C. §§ 1347 & 2). ECF No. 53.

## II. DISCUSSION

Ms. Scott moves to "*[q]uash* the Federal Grand Jury Subpoena served on Defendant and/or Delta Home Health Care LLC." ECF No. 45, PageID.422. Specifically, Ms. Scott argues that the October 29, 2025 "subpoena is directed *personally to the Defendant*, through her counsel, compelling her to identify, locate, and assemble voluminous business and medical records in response to a federal inquiry. Such a demand crosses the constitutional line from *document production* into *testimonial compulsion*." *Id.* at PageID.423. The Court disagrees.

The "Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony." *Bellis v. United States*, 417 U.S. 85, 87 (1974). Thus, "any forcible and compulsory extortion of a man's own testimony, or of his private papers to be used as evidence to convict him of crime would violate the Fifth Amendment privilege." *Id.* (cleaned up). While "[t]he privilege applies to the business records of the sole proprietor or sole practitioner as well as to personal documents containing more intimate information about the individual's private life," the privilege cannot be used by an individual "to avoid producing the records of a collective entity which are in his possession *in a representative capacity, even if these records might incriminate him personally.*" *Id.* at 87–88 (emphasis added). Thus, the Supreme Court has held that the Fifth Amendment privilege cannot be claimed "to the records of a dissolved corporation where the records were in the possession of the individual who had been the corporation's sole shareholder." *Id.* at 89.

Additionally, "[s]ince no artificial organization may utilize the personal privilege against compulsory self-incrimination, the Court found that it follows that an individual acting in his official capacity on behalf of the organization may likewise not take advantage of his personal privilege." *Id.* at 90.

5

Thus, to resolve Ms. Scott's motion, "the key question is whether the records are those of a 'collective entity' which are held by an individual in a representative capacity." *United States v. B & D Vending, Inc.*, 398 F.3d 728, 734 (6th Cir. 2004). "More specifically, the relevant questions are: (1) whether the entity whose records are being summoned is 'relatively well organized and structured,' (2) whether the records are the records of the organization, and (3) whether the records are held in a representative capacity." *Id.* (citation omitted).

First, contrary to Ms. Scott's arguments, *see* ECF No. 45, PageID.424 ("the subpoena is directed to *Ms. Scott herself,* not to a disinterested corporate custodian"), the subpoena is directed to "Delta Home Health Care LLC." ECF No. 51-1, PageID.478. Limited Liability Corporations, or "LLCs", including single-member LLC's, are undoubtedly collective entities, they are not sole proprietorships. *United States v. Feng Juan Lu*, 248 F. App'x 806, 807 (9th Cir. 2007) ("Having chosen to organize her businesses as LLCs and obtain the benefits of that business structure, Lu cannot now disregard the creation of these separate entities to obtain Fifth Amendment protection for her companies' records."); *Expert Janitorial v. Williams*, No. 09-283, 2010 WL 2854295, at *5 (E.D. Tenn. July 19, 2010) ("Defendant Williams has made her decision; she chose to limit her liability by organizing an LLC. She cannot now disregard the creation of this entity, separate and apart from her personal identity and rights, in order to avoid discovery in this

6

lawsuit."); *In re Grand Jury Subpoena (John Doe, Inc.)*, 991 F. Supp. 2d 968, 976 (E.D. Mich. 2014) (Lawson, J.) ("Mary Roe made a choice to incorporate. … Her choice to incorporate generated benefits, such as limited liability, and burdens, such as the need to respond to subpoenas for corporate records. … She may not … disregard her choice to incorporate, claim Fifth Amendment protection, and shield her business records from production. (cleaned up)).

Second, the subpoena clearly requests records of Delta Home Health Care LLC. ECF No. 51-1, PageID.479. For instance, the subpoena requests "All PATIENT RECORDS in YOUR possession for any patient for whom a claim was submitted by Delta to Medicare, Medicaid, or private insurance." and clarifies that "'PATIENT RECORDS' includes, but is not limited to, all patient files, patient records, patient notes, patient referral documentation, and doctor certifications." And that "'YOU' or 'YOUR' refers to Delta Home Health Care LLC." *Id.*

Third, the Government maintains, and Defendant does not deny, that Ms. Scott is Delta Home Health Care LLC's sole owner and Registered Agent, ECF No. 51, PageID.473. As such, Ms. Scott holds the records in her representative capacity. Ms. Scott argues that "the subpoena is directed to *Ms. Scott herself,* not to a disinterested corporate custodian." ECF No. 45, PageID.424. This claim is belied by the actual text of the subpoena. In any case, as sole owner and Registered Agent of Delta Home Health Care LLC, Ms. Scott is acting as a custodian. And "a

7

custodian may not resist a subpoena for corporate records on Fifth Amendment grounds." *Braswell v. United States*, 487 U.S. 99, 113 (1988).

Accordingly, Ms. Scott's Fifth Amendment privilege is not triggered. Thus, Ms. Scott must comply with the subpoena to produce Delta Home Health Care LLC's records. *B & D Vending, Inc.*, 398 F.3d at 735.

Next, Ms. Scott argues that "an indicted defendant cannot be compelled before a grand jury to produce evidence concerning the same offense for which she stands charged." ECF No. 45, PageID.423. In support, Ms. Scott cites to *United States v. Kirschner*, 823 F. Supp. 2d 665 (E.D. Mich. 2010). *Id.*

Indeed, "[o]nce a targeted individual has been indicted, the government must cease its use of the grand jury in preparing its case for trial." *United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993).

However, while "it is an abuse of process to call an indicted defendant before a grand jury to question him about a crime for which he has been already indicted[,] … a previously indicted defendant can be called before a grand jury to give evidence 'upon a wholly different and separable offense.'" *Kirschner*, 823 F. Supp. 2d at 667 (Borman, J.) (citing *United States v. Doss*, 563 F.2d 265, 266, 275–77 (6th Cir. 1977)).

Thus, while the Government may "continue to employ the grand jury process as part of an ongoing investigation, possibly leading to further charges against the subject of the former indictment," it may not

8

use "the grand jury in preparing its case for trial." *Phibbs*, 999 F.2d at 1077.

These same principles guide the present, albeit unusual, circumstances: a request by the Government, made *after* a superseding indictment has been filed, to enforce a grand jury subpoena which was issued *before* the operative indictment was returned.

Case law suggests that these unusual circumstances do not warrant departing from the rule that the Government may not use "the grand jury in preparing its case for trial." *Phibbs*, 999 F.2d at 1077.

In *United States v. Elhorr*, No. 13-20158, 2014 WL 5529369 (E.D. Mich. Nov. 3, 2014) (Edmunds, J.), grand jury subpoenas were issued to third parties on November 8, 2013 and November 11, 2013. *Id.* at *1. On November 27, 2013, a federal grand jury returned a first superseding indictment. *Id.* Defendant filed a motion *in limine*, arguing

> that, because the grand jury returned the First Superseding Indictment on November 27, 2013, before the subpoenaed documents [requested in the November 8 and November 11 subpoenas] were required to be returned, the government must have abused the grand jury subpoena process for the purpose of preparing an already pending indictment for trial.

*Id.* at *2. Judge Edmunds concluded that because there was no evidence that "the government wanted the subpoenaed materials for the sole or dominant purpose [of] discovering facts relating to the First Superseding Indictment," defendant's motion *in limine* should be denied. *Id.* at *4.

9

Notably, however, Judge Edmunds did *not* hold that case law establishing that it was "improper to call 'witnesses before a grand jury for the dominating purpose of gathering evidence for use in a pending case,'" *id.* at *2, was not relevant to the circumstances (which involved a subpoena that was issued *before* the first superseding indictment was returned). Instead, Judge Edmunds assumed that if the sole or dominant purpose of the November 8 and November 11 grand jury subpoenas had been to prepare for the November 27 indictment, their use would be an abuse of process. *See id.* at *3–4. Thus, *Elhorr* suggests that even if the grand jury subpoena is issued *before* the indictment was returned, if the evidence sought by the subpoena has not yet been obtained by the grand jury before the indictment is returned, then that evidence may not be used to prepare for trial on the counts contained in the already returned indictment. The Court agrees and sees no reason to depart from the rule that the Government may not use "the grand jury in preparing its case for trial." *Phibbs*, 999 F.2d at 1077.

Here, the operative indictment was filed after Ms. Scott's motion to quash the subpoena was fully briefed. *See* ECF No. 53. Thus, the Government may only utilize the October 29, 2025 information garnered from the subpoena to support additional charges and *not* for the purpose of gathering additional evidence to prove the charges contained in the indictment. *See Kirschner*, 823 F. Supp. 2d at 666–67 ("The Court concludes that the subpoena will not be quashed because, per

10

government averment, it is being utilized post-indictment to investigate additional charges. The government recognizes that it cannot use the grand jury to secure additional information on the charges contained in the indictment.").

However, Ms. Scott does not allege, nor is there any reason to believe, that the Government is improperly issuing the grand jury subpoena post-indictment to secure additional evidence against Ms. Scott on the charges contained in the operative indictment. *See, e.g., Elhorr*, 2014 WL 5529369, at *4 ("Other than observing that the First Superseding Indictment was returned before the subpoenaed documents were to be returned, Defendant offers only unproven suspicions that the government wanted the subpoenaed materials for the sole or dominant purpose [of] discovering facts relating to the First Superseding Indictment.").

Thus, the Court will not quash the subpoena on this ground. *United States v. George*, 444 F.2d 310, 314 (6th Cir. 1971) ("So long as it is not the sole or dominant purpose of the grand jury to discover facts relating to his pending indictment, the Court may not interfere with the grand jury's investigation.").

At the same time, if the sole or dominant purpose of seeking the October 29, 2025 grand jury subpoena was *not* proving the charges in the already returned indictment but was rather sought as part of an investigation of other charges, there is no abuse of the grand jury, and

11

the evidence may be used at trial. *See, e.g.*, *United States v. Woods*, 544 F.2d 242, 250 (6th Cir. 1976) (holding that because witnesses were not "improperly summoned before the grand jury for the sole or dominant purpose of preparing the pending indictments for trial" it was of no concern that testimony at trial referenced post-indictment grand jury testimony); *accord In re Grand Jury Proc.*, 814 F.2d 61, 70 (1st Cir. 1987) (Although, "a grand jury may not conduct an investigation for the primary purpose of helping the prosecution prepare indictments for trial. The prosecutor at a trial … may use evidence incidentally gained from a grand jury primarily investigating other crimes." (citations omitted)); *United States v. Alred*, 144 F.3d 1405, 1414 (11th Cir. 1998); 2 Sara Sun Beale *et al.*, Grand Jury Law and Practice § 9:16 (2d ed. 2023) (collecting cases for the proposition that "it is settled that if, in the course of such legitimate investigative efforts, the prosecution obtains evidence that is relevant to the pending case, it can use that evidence at trial.")

Thus, for the aforementioned reasons, the motion, and the amended motion, filed by Ms. Scott to quash the grand jury subpoena will be **DENIED**.[1]

---

[1] As to whether the Government may or may not use any patient records produced in response to the October 29, 2025 grand jury subpoena to prove the charges at trial, that would depend on whether the Government, as they did in *Kirschner*, 823 F. Supp. 2d at 667, can certify that the purpose of that subpoena was to investigate offenses wholly different and separate from those specifically charged in the Superseding

## III. CONCLUSION

For the reasons explained above, Defendant Scott's motion to quash the grand jury subpoena (ECF No. 45) and the amended motion to quash the grand jury subpoena (ECF No. 49) are hereby **DENIED**.

**SO ORDERED.**

Dated: January 14, 2026       s/Terrence G. Berg
                              HON. TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE

---

Indictment. The records may not be used if the purpose of the subpoena was merely to gather evidence to prove the new charges in the Superseding Indictment. If such records were produced pursuant to the administrative requests for information referenced above, such records could be used regardless of whether they may have been requested to prove the new counts in the Superseding Indictment.